UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCOS ANTONIO QUIROZ GUTIERREZ,<br><br>        Plaintiff,<br><br>    v.<br><br>ERIC HOLDER, et al.,<br><br>        Defendants. | Case No.  13-cv-05478-JST<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Before the Court is the habeas corpus petition filed by Marcos Antonio Quiroz Gutierrez pursuant to 28 U.S.C. § 2241 challenging his detention without bond under § 236(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(c), the mandatory detention provision. Pet., ECF No. 1.  The Court will deny the petition.

I.  **BACKGROUND**

Petitioner is a native and citizen of Mexico.  He was convicted of misdemeanor grand theft in violation of California Penal Code § 487(A) and of obstruction of a public officer in violation of § 148(a)(1) on March 6, 2008.  Pet., Ex. B.  He was sentenced to twenty-four months of probation, ninety days in either jail or a work release program, restitution in the amount of one hundred dollars, a fine of twenty dollars, and community service.  Petitioner declined the work release program and was ordered to serve ninety days of electronic confinement in June 2008.  During Petitioner's electronic confinement, U.S. Immigration and Customs Enforcement ("ICE") initiated removal proceedings.  Petitioner was ordered removed by an Immigration Judge pursuant to stipulation on September 10, 2008.  ECF No. 6-1, Exs. 9–10.

At some time after his deportation, Petitioner illegally re-entered the United States.  He was arrested on February 5, 2013, and posted bond on February 6, 2013, in the amount of $1,000. On June 24, 2013, Petitioner pled no contest on one count of petty theft in violation of California

1  Penal Code § 484(a) and was sentenced to twenty-four months of probation, forty-five days in jail
2  (with two days' credit for time served) or forty-three days of work release, restitution in the
3  amount of one hundred forty dollars, and a fine of seventy dollars.  Pet., Ex. C.  Petitioner was
4  ordered to report for work release by July 9, 2013.  Id.

5  There is no evidence in the record establishing whether Petitioner submitted to electronic
6  detention, for how long, or the day on which the detention period ended.  However, Respondents
7  assert without contradiction that Petitioner served a forty-three day work release detention, the last
8  day of which was August 19, 2013.  ECF No. 6 at 2:24–25 ("[ICE] attempted to apprehend
9  Petitioner on August 20, 2013, a day after completion of his work release sentence.").

10  The ICE San Francisco Fugitive Operation Team unsuccessfully attempted to arrest
11  Petitioner on August 20 and September 18, 2013, before apprehending him at his residence in
12  Santa Rosa, California on October 24, 2013.  Matson Decl., ECF No. 6-3 ¶¶ 7–9; ECF No. 6-1,
13  Ex. 11.  The declaration submitted by the arresting officer states: "Due to the manpower, caseload,
14  and geological coverage, San Francisco Operation Team cannot focus on one area or one specific
15  case.  Further, due to Sonoma County's distance, an attempt to arrest could only be made once a
16  month."  Matson Decl., ¶ 10.  The record is otherwise devoid of explanation for ICE's delay in
17  initiating removal proceedings during the six-month period between February 2013, when
18  Petitioner was arrested, and August 2013, when ICE first attempted to arrest him.  Nor is there
19  further explanation for ICE's two-month delay in taking Petitioner into custody after he completed
20  his electronic detention.

21  Although Officer Matson's declaration indicates that he attempted to arrest Petitioner in
22  August and September of 2013, ICE did not initiate removal proceedings until October 24, 2013,
23  when Petitioner was arrested.  On that date, ICE filed a notice to appear before the immigration
24  court in San Francisco and served Petitioner with a warrant for his arrest.  ECF No. 6-1, Exs. 12–
25  13. On the same day, ICE determined that Petitioner was subject to mandatory custody without
26  bond pursuant to 8 U.S.C. § 1226(c).  Id., Ex. 14.

27  Petitioner requested a hearing before an Immigration Judge.  That request was denied on
28  November 19, 2013, for lack of jurisdiction to hold a custody hearing pursuant to the INA's

2

1  mandatory detention provision. Id., Ex. 18. Petitioner appealed that decision, and the appeal is
2  currently pending. Id. Petitioner is currently scheduled for an individual immigration hearing on
3  January 15, 2014. Id., Ex. 19–20.

4      Petitioner filed the instant habeas corpus petition on November 26, 2013. The Court
5  ordered briefing and held a hearing on December 16, 2013.

## II.  JURISDICTION

Federal district courts may grant writs of habeas corpus if the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Though some immigration decisions, including bond determinations, are not subject to judicial review, see, e.g., 8 U.S.C. § 1226(e), courts may hear the habeas petitions of immigration detainees raising "constitutional claims or questions of law." Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011). Here, Petitioner argues the Immigration Judge misapplied applicable law. The Government does not contest the Court's jurisdiction to hear the case.

## III.  ANALYSIS

Petitioner seeks relief from the Immigration Judge's decision finding she did not have jurisdiction to grant Petitioner a bond hearing because he is subject to the mandatory detention provision of the INA, 8 U.S.C. § 1226(c). See also 8 C.F.R. 236.1(c). Petitioner argues the mandatory detention provision does not apply to him, and that, instead, his detention falls under section 1226(a), which grants ICE the discretion to release him on bond or conditional parole.[1]

### A.  Statutory Scheme

Under the original text of the INA, immigration authorities had the discretion to release any deportable alien on bond. Based on evidence that immigration authorities' "failure to remove deportable criminal aliens was [due to] the agency's failure to detain those aliens during their deportation proceedings," Congress amended the INA in 1988 to curb the Government's

---

[1] The immigration statutes at issue discuss detention by the Attorney General. After their enactment, immigration detention authority was transferred from the Attorney General to the Department of Homeland Security. 6 U.S.C. 251(2). The immigration statutes have not been amended to reflect this change.

3

discretion to release aliens who had been convicted of aggravated felonies.  Demore v. Kim, 538 U.S. 510, 519 (2003) (citing Pub.L. 100–690, 102 Stat. 4470).  Congress expanded the definition of "aggravated felonies" in 1990.  Id. (citing Pub.L. 101–649, 104 Stat. 5048).  Then, based on reports suggesting "that detention of criminal aliens during their removal proceedings might be the best way to ensure their successful removal from this country," id. at 521, Congress enacted the mandatory detention provision codified at 8 U.S.C. § 1226(c).  Pub. L. 104–208, 110 Stat. 3009 (Sept. 30, 1996).

Under the current statutory scheme, "[e]xcept as provided in [§ 1226] subsection (c)," immigration officials continue to have the discretion to detain deportable aliens pursuant to § 1226(a) "pending a decision on whether the alien is to be removed from the United States." Aliens detained pursuant to subsection (a) are eligible for bond hearings and conditional parole. § 1226(a)(2)(A)–(B).

The mandatory detention provided by subsection (c) is the exception to the general rule described in subsection (a).  Subsection (c) provides:

**(c) Detention of criminal aliens**

**(1) Custody**

The Attorney General shall take into custody any alien who--

>   (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>
>   (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
>
>   (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence1 to a term of imprisonment of at least 1 year, or
>
>   (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

4

> **(2) Release**
>
> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226(c). Whereas subsection (a) vests immigration authorities with discretion to decide whether to detain deportable aliens, subsection (c) commands them to take into custody "criminal aliens" who have committed certain predicate offenses. And, whereas subsection (a) vests immigration authorities with the discretion to decide whether to release detained deportable aliens on bond or parole, subsection (c) prohibits such release unless the limited witness protection exception provided for in section 1226(c)(2) is met.

Here, the Immigration Judge denied Petitioner's request for a bond hearing on the basis of section 1226(c)(2), which prohibits ICE from releasing "criminal aliens" from custody through the ordinary bond hearing process. Petitioner does not dispute that he satisfies the portion of the statute concerning predicate offenses that qualify a deportable alien as a "criminal alien." See § 1226(c)(1)(A)–(D). Instead, he argues that section 1226(c)(2) does not describe him, and therefore Petitioner is not detained pursuant to the mandatory detention provision of section 1226(c), but rather the permissive detention provision of section 1226(a).

Section 1226(c)(2) only strips immigration authorities of the discretion to release those aliens "described in paragraph (1)," subject to the witness protection exception. The precise question Petitioner poses is whether he belongs to the class of aliens "described in paragraph (1)," which provides: "The Attorney General shall take into custody any alien who" commits a predicate offense "when the alien is released . . . ." Petitioner argues that the class of aliens "described in paragraph (1)" is, by the plain terms of the statute, composed only of those aliens who both satisfy the requirement that they commit a predicate offense and have been taken into

custody "when they are released."

Petitioner argues that these requirements are not met, because he was not taken into custody "when [he was] released" from electronic detention in August 2013, but rather in October 2013, two months later. Therefore, he argues, the class of aliens "described in paragraph (1)" does not include him. Petitioner goes on to argue that, because his detention does not satisfy the requirements of subsection (c), the basis for his detention must be the permissive section 1226(a) – which means he is eligible for a bond hearing, contrary to the decision made by the Immigration Judge.

### B.     The Meaning of "When The Alien Is Released"

Petitioner's argument rests on an interpretation of section 1226(c)(1) that defines the phrase "when the alien is released" as meaning "at the moment of release" and no later. That interpretation contradicts the interpretation of the Board of Immigration Appeals ("BIA"), which has held that the mandatory detention provision applies to "criminal aliens" described in section 1226(c)(1) regardless of when they are taken into custody. In the Matter of Rojas, 23 I. & N. Dec. 117 (BIA 2001). Petitioner argues Rojas was wrongly decided. Consequently, Petitioner seeks judicial review of the interpretation of a statute by an administrative agency, which implicates Chevron deference. See Chevron, U.S.A., Inc. v. Natural Resources Def. Council, Inc., 467 U.S. 837, 842–43 (1984).

In Rojas, the BIA found that the "when . . . released" language was "susceptible to different readings" and referred to the statutory scheme and legislative history to determine its meaning. The BIA found that the phrase "when the alien is released" was not meant to limit the scope of aliens covered by the mandatory detention provision, and therefore found that "described in paragraph (1)" referred to paragraph (1) subsections (A)–(D), but not the "when . . . released" clause. The impact of the decision in Rojas is that, per the BIA, immigration authorities do not have the discretion to release "criminal aliens" regardless of when they are taken into custody.

By contrast, though neither the Ninth Circuit nor the Supreme Court have addressed the issue, "[t]he majority of district courts in this and other circuits hold that the 'when ... released' language is unambiguous," and that the mandatory detention provision applies only to "criminal

aliens" who are detained upon their release. Deluis-Morelos v. ICE Field Office Dir., No. 12-CV-1905-JLR, 2013 WL 1914390, at *4 (W.D. Wash. May 8, 2013) (citing cases). See, e.g., Espinoza v. Atken, No. 5:13–cv–00512-EJR, 2013 WL 1087492, at *6 (N.D. Cal. Mar. 13, 2013) (holding "when . . . released" language limits scope of mandatory detention provision to criminal aliens detained when released where detainee was arrested by ICE six months after conviction and sentence of probation and time served); Bumanlag v. Durfor, No. 12-CV-2824-DAD, 2013 WL 1091635 (E.D. Cal. Mar. 15, 2013) (holding same where detainee was arrested by ICE seven years after release from prison); Dighero-Castaneda v. Napolitano, No. 12-CV-2367-DAD, 2013 WL 1091230, at *6 (E.D. Cal. Mar. 15, 2013) ("8 U.S.C. § 1226(c) does not apply unless the petitioner is taken into custody immediately or very shortly after his release from prison on the underlying removable offense."); Quezada-Bucio v. Ridge, 317 F. Supp. 2d 1221, 1229–30 (W.D. Wash. 2004) (holding same). But see Hosh v. Lucero, 680 F.3d 375, 378 (4th Cir. 2012) ("In our view, although § 1226(c) may arguably be susceptible to more than one interpretation, the BIA's interpretation of the statute in In re Rojas is a permissible, and more plausible, construction. We therefore give deference to the BIA's interpretation, and we must reverse the holding below.").

This Court declines to decide the issue for the same reasons the Third Circuit declined to do so in Sylvain v. Attorney Gen. of U.S., 714 F.3d 150 (3d Cir. 2013). As the Court will discuss below, "[e]ven if the statute calls for detention 'when the alien is released,' and even if 'when' implies something less than [two months], nothing in the statute suggests that immigration officials lose authority if they delay." Id. at 157.

**C.     The "Better-Late-Than-Never" Principle**

Supreme Court authority provides that "if a statute imposes a duty on an agency to act by a deadline, absent a clear indication otherwise, the agency does not lose the authority to act after that deadline." ECF No. 6 at 8. This rule has been referred to as the "better-late-than-never" principle. United States v. Dolan, 571 F.3d 1022, 1027 (10th Cir. 2009) aff'd, 560 U.S. 605 (2010).

The Government's argument stems from a canon of statutory construction that counsels against "readily infer[ring] congressional intent to limit an agency's power to get a mandatory job done merely from a specification to act by a certain time." Barnhart v. Peabody Coal, 537 U.S.

7

149, 160 (2003) (holding deadline for Commissioner of Social Security to assign coal industry retirees to signatory operators under the Coal Industry Retiree Health Benefits Act was not a jurisdictional deadline, rendering initial assignments made after the deadline valid despite their untimeliness). Generally, "if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction." United States v. James Daniel Good Real Property, 510 U.S. 43, 63 (1993). In Barnhart, the Supreme Court held that "a statute directing official action needs more than a mandatory 'shall' before the grant of power can sensibly be read to expire when the job is supposed to be done." 537 U.S. at 160.

Here, the Government argues by analogy to the Supreme Court's decision in United States v. Montalvo-Murillo, 495 U.S. 711, 717 (1990), that the "better-late-than-never" principle dictates a finding that the mandatory detention provision applies to "criminal aliens" even when they are arrested after they are released. See, e.g., Sylvain, 714 F.3d at 157.

In Montalvo-Murillo, a magistrate judge ordered a criminal suspect released on bond. After a *de novo* detention hearing, the district court disagreed, finding that the suspect was a flight risk. Nevertheless, the district court ordered the suspect released because the magistrate failed to hold the detention hearing "upon the person's first appearance," as required by the Bail Reform Act of 1984 ("BRA"). 18 U.S.C. § 3142(f) (West 1990). The relevant portions of the BRA at the time Montalvo-Murillo was decided are as follows:

> **(e) Detention.** If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial.
>
> \*   \*   \*
>
> **(f) Detention hearing.** The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of the person as required and the safety of any other person and the community--

8

> \* \* \*
>
> The hearing shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance.

18 U.S.C. § 3142(e)–(f) (West 1990). The BRA also permitted then, as it does now, the pretrial release of a criminal defendant subject to certain findings concerning risk of flight and danger to the community. See 18 U.S.C. § 3142(b)–(d) (West 1990). The suspect in Montalvo-Murillo argued, and the district court held, that "pretrial release on conditions [pursuant to 18 U.S.C. § 3142(c)] was the appropriate remedy for violation of the statutory requirement" that the detention hearing be held "upon the person's first appearance." 495 U.S. at 716. The Tenth Circuit Court of Appeals affirmed the district court, and the Supreme Court reversed.

Recognizing that "a vital liberty interest is at stake," the Supreme Court noted that "[a] prompt hearing is necessary, and the time limitations of the Act must be followed with care and precision." Id. Nevertheless, the Court found that "the Act is silent on the issue of a remedy for violations of its time limits. Neither the timing requirements nor any other part of the Act can be read to require, or even suggest, that a timing error must result in release of a person who should otherwise be detained." Id. at 716–17. Consequently, the Court held that "a failure to comply with the first appearance requirement does not defeat the Government's authority to seek detention of the person charged." Id. at 717. In so holding, the Court relied on the "'great principle of public policy, applicable to all governments alike, which forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided.'" Id. at 718 (quoting Brock v. Pierce County, 476 U.S. 253, 260 (1986)). The Court counseled against "invent[ing] a remedy to satisfy some perceived need to coerce the courts and the Government into complying with the statutory time limits. Magistrates and district judges can be presumed to insist upon compliance with the law without the threat that we must embarrass the system by releasing a suspect certain to flee from justice . . . ." Id. at 721.

The detention provision of the BRA examined by the Court in Montalvo-Murillo is exceedingly similar to the INA's mandatory detention provision. Detention pursuant to the BRA depends on the holding of "a hearing pursuant to the provisions of [§ 3142] subsection (f)," and

9

mandatory detention pursuant to the INA applies only to aliens "described in [§ 1226(c)] paragraph (1)." The BRA's hearing provisions at § 3142(f) require that the hearing be held "upon the person's first appearance"; the class of "criminal aliens" described at section 1226(c)(1) who are subject to the INA's mandatory detention provision is limited in scope to those who are taken into custody "when [they are] released." Finally, the purpose of the BRA's detention provision is "to assure the safety of persons in the community and to protect against the risk of flight," Montalvo-Murillo, 495 U.S. at 719–20; the purpose of the INA's mandatory detention provision is to "prevent[] deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." Demore, 538 U.S. at 528. The INA provision was enacted based on evidence that "permitting discretionary release of aliens pending their removal hearings would lead to large numbers of deportable criminal aliens skipping their hearings and remaining at large in the United States unlawfully." Id.

These similarities led the Third Circuit in Sylvain to adopt the same position the Government urges here. First, the Sylvain court found that the INA's mandatory detention provision does not explicitly strip ICE of the authority to "impose mandatory detention" if the alien has already been released from criminal custody. 714 F.3d at 157. Second, the court reasoned that "[b]ureaucratic inaction — whether the result of inertia, oversight, or design — should not rob the public of statutory benefits . . . . And so we see 'no reason to bestow upon [aliens] a windfall and to visit upon the Government and the citizens a severe penalty' by mandating a bond hearing 'every time some deviation from the strictures of [the statute] occurs.'" Id. at 158–159 (quoting Montalvo-Murillo, 538 U.S. at 720). The Fourth Circuit has adopted the same approach. Hosh v. Lucero, 680 F.3d 375, 381–83 (4th Cir. 2012) ("Like the statute at issue in Montalvo–Murillo, § 1226(c) does not specify any consequence for the Government's failure to detain a criminal alien immediately upon release, and therefore even if 'the duty is mandatory, the sanction for breach is not loss of all later powers to act.'").

The Third Circuit in Sylvain rejected two attempts to distinguish the BRA from the INA. First, while recognizing that the remedy sought in Montalvo-Murillo was release, whereas the

10

1    remedy sought in Sylvain was a bond hearing, the court found that "in the ways that matter, the
2    cases are alike. Indeed, the ultimate question in both cases is whether a person might be eligible
3    for a release despite some lapsed deadline."[2] Id. at 160.
4        Next, the petitioner in Sylvain argued that, unlike in the BRA context, Congress provided
5    an explicit consequence for noncompliance with the "when . . . released" language. Because
6    subsection (a) sets out a permissive detention rule "[e]xcept as provided in subsection (c)," the
7    petitioner argued that an alien who does not fit the description in section 1226(c)(1) therefore falls
8    under subsection (a), which renders the alien eligible for a bond hearing. The Sylvain court
9    rejected that argument for three reasons. First, the court found that the "[e]xcept as provided in
10   subsection (c)" language was not the type of "clear language" required by the Supreme Court
11   because it failed explicitly to invoke the time requirement. Id. Second, the court noted that the
12   INA's mandatory detention provision was enacted after the Supreme Court's decision in Brock v.
13   Pierce Cnty., 476 U.S. 253, 260 (1986), which embraced the "better-late-than-never" principle.
14   Sylvain, 714 F.3d at 160 n.10. Third, the court found that the petitioner's "interpretation would
15   lead to an outcome contrary to the statute's design: a dangerous alien would be eligible for a
16   hearing — which could lead to his release — merely because an official missed the deadline. This
17   reintroduces discretion into the process and bestows a windfall upon dangerous criminals." Id. at
18   160.
19       This Court finds an additional, fourth ground upon which to reject that argument: like the
20   INA, the BRA also provides an analogous, implicit consequence for noncompliance with the

---

[2] But see Baquera v. Longshore, No. 13-CV-00543-RM, 2013 WL 2423178 (D. Colo. June 4, 2013) ("This Court rules that the difference between the result in Montalvo–Murillo—where the alien was seeking outright release—and this case—where the alien is seeking an individualized bond hearing—is also significant."); Valdez v. Terry, 874 F. Supp. 2d 1262, 1266 (D.N.M. 2012) ("Here, however, the Court is not mandating Petitioner's release; instead, the Court is merely ordering that Petitioner be given a bond hearing so an immigration judge can determine whether he is a threat to the community or a flight risk."); Castillo v. ICE Field Office Dir., 907 F. Supp. 2d 1235, 1239 (W.D. Wash. 2012) ("[T]his case is about providing due process to an individual, not taking away a benefit afforded the government. As the Hosh court acknowledged, even if this Court finds that § [1226](c) is not applicable, "the Government would retain the ability to detain criminal aliens after a bond hearing.").

11

timing requirement — treatment of the pretrial detainee under one of the other prongs of § 3124, such as conditional release, or release on personal recognizance. The Supreme Court in Montalvo-Murillo was not persuaded that Congress intended to apply one of those other prongs to pretrial detainees whose bond hearings are held after their "first appearance." The same logic applies to the structure of the INA's mandatory detention provision, which lacks any explicit command that an alien otherwise covered by the mandatory detention provision be treated pursuant to subsection (a)'s permissive detention provision solely by virtue of noncompliance with the "when . . . release" language. Because the Supreme Court requires "clear language," this Court finds that the phrase "[e]xcept as provided by subsection (c)" found at 8 U.S.C. § 1226(a) is an insufficient expression of congressional intent necessary to provide a consequence for failure to arrest a "criminal alien" after the alien is released from criminal custody.

Petitioner here raises one last distinction between the BRA and the INA provisions: while the Supreme Court's decision in Montalvo-Murillo focused on the "authority" of a judicial officer to detain a criminal defendant, the INA provisions are inversely oriented, focusing instead on stripping the Government of its authority to release a "criminal alien." See, e.g., Castaneda v. Souza, No. 13-cv-10874-WGY, 2013 WL 3353747 (D. Mass. July 3, 2013) ("Section 1226 is not about the authority to hold an alien. Even if ICE misses the deadline for detaining the alien under section 1226(c), it still has the power to hold him under section 1226(a) subject to a bond hearing. Thus, the power to hold is not what is at stake. Rather, what is at stake is the power to exercise discretion."). Petitioner does not explain why the distinction is relevant. The Supreme Court's concern in Montalvo-Murillo was the prejudice to public interests by virtue of the Government's negligence. With the BRA, Congress sought to ensure pretrial detainees are released or detained subject to the appropriate findings addressing flight risk and danger to the community. With the INA, Congress sought to ensure the Government cannot, in its discretion, release "criminal aliens." Granting Petitioner's habeas petition here would "rob the public of statutory benefits" in a manner the Supreme Court strongly disfavors. Sylvain, 714 F.3d at 158.

Cognizant of the "vital liberty interest" at stake, this Court does not lightly extend the holding in Montalvo-Murillo to the INA's mandatory detention provision, 8 U.S.C. § 1226(c).

The Court also recognizes that many district courts in this circuit have reached a different result. But this Court finds the grounds upon which Petitioner and others have attempted to distinguish the holding in Montalvo-Murillo from the present case unpersuasive, and the reasoning of Sylvain convincing. Even if 8 U.S.C. § 1226(c), by its terms, does not apply to aliens who are arrested after they are released from criminal custody, this Court holds that the Supreme Court's holding in Montalvo-Murillo applies squarely to this case and dictates a finding in favor of the Government.

## IV.   CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is hereby DENIED.

**IT IS SO ORDERED.**

Dated: January 2, 2014

_____
JON S. TIGAR
United States District Judge